**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 17-18575 |
| Darryl Swindle, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Jacqueline P. Cox |
| | ) | |

JACQUELINE P. COX, Bankruptcy Judge

MEMORANDUM OPINION

On May 9, 2017, Ebony Lucas ("Ms. Lucas"), on behalf of her client Parkside Place Condominium Association ("Parkside"), filed a motion in state court to secure an order of possession against Mr. Daryl Swindle ("Debtor") in Case No. 2017 M1 708015 in the Circuit Court of Cook County, Illinois. On June 20, 2017, the Debtor filed for Chapter 13 bankruptcy relief under Title 11 of the United States Code. Notice of the bankruptcy was sent to Ms. Lucas and Parkside on June 23, 2017 at the address listed for Ms. Lucas' law firm, Property Law Group. Dkt. 9, p. 3.

On June 23, 2017, Judge Hamilton entered an order of possession against the Debtor and enforcement of that order was stayed until August 24, 2017. Debtor's 1/8/18 Hearing Exhibit No. 1, p. 4, Docket for Cook County Circuit Court Case 2017-M1-708015. The Debtor's plan was confirmed August 7, 2017 and included $27,480.00 to cure pre-petition arrears owed to Parkside. Dkt. 14.

On October 16, 2017, Ms. Lucas sent an email to Parkside stating in relevant part, "Darryl Swindle will be evicted tomorrow between 8am – 12pm….[T]he sheriff requests for the safety of the officers that you do not inform the tenant of the pending eviction." Debtor's 1/8/18 Hearing Exhibit No. 8, Screenshot of Email forwarded to Darryl Swindle and his counsel. Shortly thereafter, the Debtor received a call from Don Johnson, board member for Parkside, informing him that based upon an email from Ms. Lucas, the Debtor was scheduled to be evicted the following day. Transcript of January 8, 2018 Hearing, p. 25 (hereinafter "Transcript 1"). The Debtor contacted his bankruptcy attorney who told him that an eviction should not take place due to the automatic stay. *Id*. at 26. The Debtor, who works as a medical transportation provider, took off work to address the scheduled eviction and paid subcontractors to cover his appointments. *Id*. at 16 - 17. In addition, the Debtor explained the terrible feeling of having to call his family members for help and ask if they had room to at least house his son. *Id*. at 11-12.

Debtor's counsel then emailed Ms. Lucas with a copy of the notice of the bankruptcy and informed her that any eviction efforts would result in a motion for a rule to show cause for failing to comply with the automatic stay. Debtor's 1/8/18 Hearing Exhibit No. 10, Email to Ebony Lucas. Debtor's counsel emailed Ms. Lucas later that same day to inform her that the Sheriff's Office would not enforce an order of possession until the automatic stay has been lifted. Debtor's 1/8/18 Hearing Exhibit No. 12, Second Email to Ebony Lucas dated October 16, 2017. On October 17, 2017, the Debtor noticed a locksmith who regularly comes to the building to change locks. Transcript 1, p. 11. Debtor's counsel emailed Ms. Lucas to inquire about the status of the eviction, to which Ms. Lucas responded at 10:09 am that the eviction was cancelled. Debtor's 1/8/18 Hearing Exhibit No. 16, p.1, Email to Ebony Lucas, dated October 16, 2017.

On October 19, 2017 Ms. Lucas filed a motion for relief from the automatic stay to evict the Debtor. Dkt. 16. The next day, the Debtor filed a motion for sanctions and a motion for a rule to show cause seeking damages against Ms. Lucas for violating the automatic stay by attempting to evict the Debtor. Dkt. 19. Both the motion for relief from the automatic stay and the motion for sanctions were heard by this court on October 30, 2017.

Ms. Lucas did not appear at the October 30, 2017 hearing and this court entered an order striking the motion for relief from the automatic stay and granted the Debtor's motion for sanctions and the motion for a rule to show cause. Dkt. 24, 29.

On November 1, 2017, Ms. Lucas filed a second motion for relief from the automatic stay to be heard on November 6, 2017, citing a pre-petition default of $21,000.00 and a post-petition default of $1200.00. Dkt. 25. At the November 6, 2017 hearing, the Debtor represented to this court that he made post-petition payments which brought him substantially current with Parkside. Transcript of November 6, 2017 Hearing, p. 3 (hereinafter "Transcript 2"). In response, Ms. Lucas confirmed that the Debtor was current on post-petition payments, but indicated that he was not current on pre-petition payments. *Id*. The Debtor replied that he is allowed by law to cure the pre-petition default over the life of the plan. Transcript 2, p. 5. This court denied Ms. Lucas' second motion for relief from the automatic stay.  Dkt. 30.

On November 27, 2017, this court entered an award for damages in favor of the Debtor with a December 11, 2017 hearing date to provide proof of damages. Dkt. 33. Ms. Lucas filed a motion to vacate the order. Dkt. 34. An evidentiary hearing was held on January 8, 2018 because the parties disagreed about the facts included in the Debtor's motion for sanctions. Ms. Lucas did not present any exhibits or witnesses at the January 8, 2018 hearing because she did not comply with the court's order requiring prior disclosure of exhibits and witnesses. Dkt. 40.

Ms. Lucas testified that she did not learn of the Debtor's bankruptcy petition until July 12, 2017. Transcript 1, p. 36. Further, as soon as she learned of the petition, Ms. Lucas' office informed the Cook County Sheriff's Office of the petition and also requested that Judge Hamilton strike the matter from the court call. *Id.* Additionally, Ms. Lucas testified "Clearly, there was an error in the Sheriff's office." Transcript 1, p. 38.

Based on the pleadings, the evidence submitted at the January 8, 2018 hearing, counsels' arguments, and for the reasons set forth in this opinion, Ms. Lucas' motion to vacate is denied. The Debtor's motion is granted and damages are awarded to him in the amount of $1652.74 for actual damages (economic damages 1152.74 for lost income and $500.00 for emotional distress) and $1,000.00 in punitive damages, for a total of $2652.74.

## The Automatic Stay

11 U.S.C. § 362(a) provides:

[A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(b)(22) provides that a voluntary petition does not operate as a stay

subject to subsection (*l*), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the **lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor**; (emphasis added)

11 U.S.C. § 362(k)(1) provides:

[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The purpose of the automatic stay is to give the debtor

> "a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that. *In re Achterberg*, 573 B.R. 819, 835 (Bankr. E.D. Cal. 2017), (*quoting* H. Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 340–344).

"The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Hall-Walker*, 445 B.R. 873, 876 (Bankr. N.D. Ill. 2011) (*quoting Fidelity Mortg. Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2d Cir.1976). *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540).

## Analysis

The automatic stay is a self-executing provision of the Bankruptcy Code and begins to operate nationwide, without notice, once a debtor files a petition for relief. *In re Wilson*, 536 B.R. 218, 221–22 (Bankr. N.D. Ill. 2015) (*quoting In re A.H. Robins Co., Inc.,* 63 B.R. 986, 988 (Bankr.E.D.Va.1986), *aff'd,* 839 F.2d 198 (4th Cir.1988)), *cert. denied,* 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988). In this case, the automatic stay became effective on June 20, 2017, the date the Debtor filed his bankruptcy petition. The order of possession entered June 23, 2017 violated the automatic stay because it continued a judicial proceeding against the debtor after the automatic stay became effective pursuant to 11 U.S.C. § 362(a). It is well-established in case law that acts taken in violation of the automatic stay imposed under section 362(a) of the Bankruptcy Code are deemed

void *ab initio* and lack effect. *In re Enyedi*, 371 B.R. 327, 334 (Bankr. N.D. Ill. 2007). *See Middle Tenn. News Co., Inc. v. Charnel of Cincinnati, Inc.,* 250 F.3d 1077, 1082 (7th Cir.2001). In this case, the order of possession was void retroactive to June 20, 2017.

Once a bankruptcy petition is filed, and the automatic stay goes into effect, the debtor has the burden of providing the creditor with actual notice of the bankruptcy. Once notice is provided, the burden shifts to the creditor to prevent violations of the automatic stay. *In re Galmore*, 390 B.R. 901 (Bankr. N.D. Ind. 2008). This court finds that Ms. Lucas received actual notice of the bankruptcy petition on June 23, 2017 through the Bankruptcy Noticing Center and will now look to examine whether Ms. Lucas prevented violations of the automatic stay.

The Seventh Circuit has held that a "creditor has an affirmative duty to undo acts which violate the stay, even if she had no actual notice of the bankruptcy at the time the acts were performed." *In re Kuzniewski*, 508 B.R. 678, 685 (Bankr. N.D. Ill. 2014) (*quoting Smith v. Albert (In re Smith)*, No. 96–2881, 111 F.3d 133 (7th Cir. Apr. 8, 1997)). The court in *Kuzniewski* ruled in favor of the creditor in part because the citation was issued and served pre-petition explaining that if the creditor "initiated the citation proceeding post-petition and in violation of the automatic stay, it likely would have had an affirmative duty to dismiss that proceeding in order to return to the *status quo* as of the petition date." *Id*. at 685-686.

Ms. Lucas' conduct is distinguishable from the creditor in *Kuzniewski* because the order of possession was entered-post petition. Therefore Ms. Lucas had a duty to return to the status quo on the bankruptcy petition date where no order of possession existed. Even though Ms. Lucas and her client did not receive actual notice of the Debtor's bankruptcy petition until June 23, 2017, upon learning of the petition, Ms. Lucas had an affirmative duty to undo acts which violated the automatic stay. Specifically, Ms. Lucas had a duty to undo the order of possession entered on June 23, 2017

and file a motion for relief from the automatic stay if her client sought to proceed with the eviction. Ms. Lucas explained that she attempted to undo the order of possession on July 12, 2017 by requesting that the state court strike the case from the court call and informing the Cook County Sherriff's Office of the bankruptcy, however, she has not submitted any documents showing that the Sheriff was told not to enforce the order of possession.

Ms. Lucas' conduct was not a technical violation of the automatic stay. A technical violation occurs when a creditor violates the provisions of § 362(a) without knowledge that an active bankruptcy case is pending. *In re Will*, 303 B.R. 357, 364 (Bankr. N.D. Ill. 2003) (*quoting Clayton v. King (In re Clayton)*, 235 B.R. 801, 807 (Bankr. M.D.N.C. 1998). A Court will not impose sanctions under § 362(k) (formerly § 362(h)) when there has been a mere technical violation of the stay or where it can be found that the creditor has acted in good faith. *In re Webb*, No. BANKR.08-41537, 2009 WL 1490034, at *1 (Bankr. S.D. Ill. May 27, 2009) (*quoting In re Welch*, 296 B.R. 170 (Bankr.C.D.Ill.2003). However, Ms. Lucas has not established that her actions were in good faith because the initial technical violation was not cured for four months and "willfulness" can be established by inaction when it amounts to a reckless disregard of the § 362 stay. *In re Will*, 303 B.R. 357, 365 (Bankr. N.D. Ill. 2003) (*quoting In re Shealy*, 90 B.R. 176, 179–80 (Bankr.W.D.N.C.1988).

To this end, the Tenth Circuit found that a judgment creditor did not violate the stay because after a foreclosure complaint was amended, the creditor stayed foreclosure proceedings until after a motion to lift the automatic stay was granted and after the case was dismissed. *In re Kline*, 472 B.R. 98, 103 (B.A.P. 10th Cir. 2012), *aff'd*, 514 F. App'x 810 (10th Cir. 2013). Even an innocent stay violation, i.e., one committed without knowledge of a stay, will become "willful" if a creditor fails

7

to remedy the violation after receiving notice of the stay. *Id*. Here, Ms. Lucas is distinguishable from the creditor in *Kline*; she tried to evict the Debtor despite having notice of the automatic stay. Ms. Lucas failed to demonstrate an active and timely efforts to undo the order of possession.

Even if Ms. Lucas believed her prior actions (asking Judge Hamilton to strike the matter from the court call) were sufficient to undo the order of possession, when she learned that the Sheriff still planned to proceed with the eviction, she had a duty to inform the Sheriff of the automatic stay as it relates to the Debtor and to ensure eviction proceedings were discontinued. At a minimum, the call from the Sherriff should have caused Ms. Lucas to immediately reference her case file, which would have revealed that the order of possession was void as of June 20, 2017, the date the bankruptcy was filed. Instead, Ms. Lucas sent an email to Parkside explaining how to assist the Sheriff. But for the courtesy call placed to the Debtor by Parkside board member Donald Johnson, the Debtor likely would have not known about the eviction until it was too late. Therefore, the status quo was put dangerously at risk and not restored until the attempted eviction was cancelled.

Ms. Lucas seeking the order of possession itself was not a willful violation of the automatic stay but "[A]s for willfulness, there is no requirement that the creditor act with the intent to violate the stay; acting with knowledge of the bankruptcy and the stay is all that is necessary. *In re Yantis*, 553 B.R. 351, 354 (Bankr. N.D. Ind. 2016) (*quoting In re Price*, 42, F.3d 1068, 1071 (7th Cir. 1994)) (holding that creditor willfully violated the stay by failing to stop garnishment upon notice of the bankruptcy). Like the creditor in *Yantis*, Ms. Lucas' willful violation is grounded in her failure to undo the order of possession after multiple reminders that the bankruptcy and the automatic stay were in place. Based on the conduct leading up to the attempted eviction against the Debtor, this court finds that Ms. Lucas willfully violated the automatic stay.

### Recovery of Damages

Having found that Ms. Lucas willfully violated the automatic stay, the court will now turn to examine if the Debtor is entitled to recovery of any damages. Similar to the Debtor in this case, individuals injured by any willful violation shall recover shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(k)(1). To recover damages under 362(k), a debtor must prove by a preponderance of the evidence, that:

(a) A bankruptcy petition was filed;

(b) The aggrieved debtor is an 'individual';

(c) The creditor had notice of the petition;

(d) The creditor's actions were willful and violated the stay; and

(e) The debtor is entitled to a form of relief provided by Section 362(k).

*In re Kondritz*, No. 10-12630-FJO-7, 2011 WL 2292292, at *4 (Bankr. S.D. Ind. June 8, 2011)

Debtor filed his Chapter 13 bankruptcy petition on June 20, 2017. Under 11 U.S.C. § 109(e) any individual, even if self-employed or operating an unincorporated business, is eligible for chapter 13 relief as long as the individual's unsecured debts are less than $394,725 and secured debts are less than $1,184,200. The Debtor is an individual whose combined unsecured debts are below the threshold for an individual at $54,836.32. *See* Dkt. 1, Voluntary Petition p. 8, Debtor's Summary of Liabilities for Schedules E/F. Notice of the bankruptcy was sent to Ebony Lucas and Parkside on June 23, 2017 at the address listed for Ms. Lucas' law firm, Property Law Group.

For the reasons noted herein, Ms. Lucas' failure to halt the eviction proceedings and failure to timely and properly undo the order of possession amount to a willful violation of the automatic stay.

### Actual Damages

Once a willful stay violation is proven, the Court must award actual damages, including costs and attorneys' fees. *In re Escobedo*, 513 B.R. 605, 612 (Bankr. D.N.M. 2014). Here, the Debtor was forced to forego $1152.74 in lost wages over two days to both defend against and possibly prepare for an eviction caused by Ms. Lucas' conduct. Therefore, the court finds that the Debtor is entitled to an award for $1152.74 to cover actual damages.

The Debtor also incurred emotional distress due to the pain of having to find housing for his family and prepare for an eviction on one day's notice. Damages for emotional distress are available as actual damages under § 362(k)(1), regardless of whether there are financial damages. *Sundquist v. Bank of Am., N.A. (In re Sundquist)*, 566 B.R. 563, 587 (Bankr. E.D. Cal. 2017), (*quoting In re Dawson*, 390 F.3d 1139, 1148-49 (9th Cir. 2004), *vacated in part sub nom. In re Sundquist,* No. 10-35624, 2018 WL 494630 (Bankr. E.D. Cal. Jan. 18, 2018) (awarding $45 million in punitive damages against creditor that sought and reversed a foreclosure in the context a loan modification conducted in bad faith). *But see In re Aiello (Aiello),* 239 F.2nd 880 (7th Cir. 2001) (finding that any compensable emotional injury must accompany a financial loss). The Debtor is eligible for emotional distress pursuant to *Sundquist* and the higher standard set forth in the Seventh Circuit through *Aiello* due to the clear showing of economic damages.

10

Moreover, testimony of the victim is permitted to prove the "[T]hree elements [are] required for emotional distress damages: (1) significant harm; (2) clearly established; and (3) with a causal connection between the stay violation and the harm (as distinct from anxiety and pressures inherent in the bankruptcy process. *Sundquist,* 566 B.R. at 587. In this case, the Debtor's testimony clearly demonstrated the significant emotional harm of having to prepare for an eviction on one day's notice and seeking housing for his son. The Debtor's confirmed plan provides for Parkside, which after four months of silence, would reasonably lead the Debtor to believe that an eviction was not imminent. It was Ms. Lucas' failure to undo the order possession that ultimately caused the attempted eviction and the resulting actual damages in the form of economic damages and emotional distress. This court finds that the Debtor has satisfied the elements of emotional distress and is entitled to an award for $500.00 for the emotional distress he suffered. Therefore, based on the pleadings, the evidence submitted at the January 8, 2018 hearing, counsels' arguments, and for the reasons set forth in this opinion, actual damages are awarded to the Debtor in the amount of $1652.74; $1152.74 for lost income and $500.00 for emotional distress.

## **Punitive Damages**

Ms. Lucas' conduct was egregious enough for the court to consider punitive damages. 11 U.S.C. § 362(k)(1) provides in  appropriate circumstances, punitive damages for willful violations of the automatic stay.

> The primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior; the prospect for change is relevant to the amount of punitive damages to be awarded (citations omitted). Factors to be considered for an award of punitive damages for a willful violation of the automatic stay include the following: the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the

11

level of sophistication of the creditor, the creditor's motives, and any provocation by
the debtor.

*In re Radcliffe*, 372 B.R. 401, 423 (Bankr. N.D. Ind. 2007), *quoting In re Shade*, 261
B.R. 213, 216 (Bankr. C.D. Ill. 2001), *aff'd*, 390 B.R. 881 (N.D. Ind. 2008), *aff'd*, 563 F
.3d 627 (7th Cir. 2009).

In this case, punitive damages are appropriate to make sure that Ms. Lucas and similarly
situated creditors take substantive and timely action to cure violations of the automatic stay;
especially when non-compliance can lead to eviction. Ms. Lucas is a sophisticated creditor's
attorney who had notice of the automatic stay for four months and complied with the Bankruptcy
Code only after the Sheriff provided notice and she received multiple warnings from Debtor's
Counsel.

This court finds that the Debtor has proven by a preponderance of the evidence the factors
explained in *Kondritz* that justifies the $1,000.00 award for punitive damages under 11 § U.S.C.
362(k)(1).

Ms. Lucas' motion to vacate is denied. In summary, damages are awarded to the Debtor as
follows;

$1652.74 for actual damages (economic damages $1152.74 for lost income

and $500.00 for emotional distress);

$1,000.00 in punitive damages, for a total of $2652.74.

The Debtor's attorney may file a petition for attorney's fees incurred by the Debtor[1] on or before March 5, 2018. Ms. Lucas may file a response to any such petition on or before March 19, 2018. This matter is set for a status hearing on March 26, 2018 at 11:00 am.

So Ordered.

*Jacqueline P. Cox*

*J. P. Cox*

Judge Jacqueline P. Cox.

February 7, 2018

---

[1] When the attorneys have to engage in discovery, file complex motions or adversary proceedings and litigate such, the CARA provides "in extraordinary circumstances, such as extended evidentiary hearings or appeals, the attorney may apply to the court for additional compensation for these services." *In re Anderson*, No. 14 B 11526, 2016 WL 6833907, slip op. at 2 (Bankr. N.D. Ill. Nov. 18, 2016) (*quoting* Court Approved Retention Agreement (revised March 15, 2011), p. 2-3). The Court Approved Retention Agreement used in this case (for cases filed after September 18, 2016) has the same provision for attorney's fees covering extraordinary circumstances. (Dkt. 12, Exhibit 6, p. 6, ¶ 4). This proceeding qualifies as an extraordinary circumstances because Debtor's counsel had to litigate an adversary hearing.